1

2

3

4

5

6          **UNITED STATES DISTRICT COURT**

7          **EASTERN DISTRICT OF CALIFORNIA**

8                    **FRESNO DIVISION**

9

10   **GERALD L. MILLER, JR.,**               Civil No.     08cv01233-BTM(WMC)
     **CDCR #C-92075,**

11
                                    **Plaintiff,**
12                                               **ORDER**

13                                               **(1) DENYING DEFENDANT RUFINO'S**
              **vs.**                            **MOTION FOR SUMMARY**
14                                               **JUDGMENT;**

15   **O. RUFION,** *et al.*,                    **(2) GRANTING DEFENDANT**
                                                 **MOONGA'S MOTION FOR SUMMARY**
16                                               **JUDGMENT; and**

17                                  **Defendants.**  **(3)  ORDERING CAPTION**
                                                 **CORRECTION**
18
                                                 **(Dkt No. 65)**
19

20          Plaintiff Gerald L. Miller, Jr. ("Miller"), a state prisoner proceeding *pro se* and *in forma pauperis*

21   with a Second Amended Prisoner Civil Rights Complaint pursuant to 42 U.S.C. § 1983, alleges prison

     officials denied him medical treatment for a broken thumb in violation of the Eighth Amendment.  He
22
     also presents a retaliation and conspiracy claim.  He names as defendants three medical staff members,
23
     in their official and individual capacities, and seeks compensatory and punitive damages as well as
24
     injunctive relief.  (Dkt No. 37, 8:1-8.)  On May 27, 2010, two of the three named defendants, O. Rufino[1]
25
26   ("Rufino") and G. Moonga ("Moonga") (collectively "Defendants"), filed a FED.R.CIV.P. ("Rule") 56

27   _____

28          [1]  Miller incorrectly spelled defendant O. Rufino's name in his Complaint caption as "Rufion," and the
     name remains misspelled in the case docket.

                                    -1-                                    08cv01233

1   Motion For Summary Judgment ("Motion") on the Eighth Amendment claim.  (Dkt No. 65.)  Miller filed

2   an Opposition accompanied by exhibits and his Declaration, then a Supplemental Opposition to provide

3   additional legal authority.  (Dkt Nos. 76, 86.)  Defendants filed a Reply.  (Dkt No. 77.)  After careful

4   consideration of the parties' briefing and exhibits in light of controlling legal authority, the Court finds

5   Miller raises a triable issue of material fact concerning his allegation moving defendant Rufino was

6   deliberately indifferent to his serious medical needs, foreclosing summary judgment.  The Court further

7   finds Miller fails to raise a triable issue of material fact concerning the same allegation with respect to

8   moving defendant Moonga, and Moonga is entitled to judgment in his favor as a matter of law.  The

9   Court therefore **DENIES** the Motion in part and **GRANTS** the Motion in part.

10  **I.      BACKGROUND**

11           Miller filed his civil rights Complaint initiating this action on August 20, 2008, naming as

12  defendants Rufino and  Moonga, and a First Amended Complaint naming the same two defendants

13  before they had appeared in the action.  By Order entered November 26, 2008, this matter was reassigned

14  for all purposes from the bench of the Eastern District of California to the undersigned visiting judge.

15  (Dkt No. 9.)  Miller moved to amend the complaint again to add a third defendant, Dr. J. Akanno.  (Dkt

16  No. 34.)  By Order entered December 15, 2009, the Court granted Miller leave to file his Second

17  Amended Complaint ("SAC"), instructed the Clerk of Court to issue the appropriate summons with the

18  documents necessary for the U.S. Marshal Service to serve Dr. Akanno, and directed the defendants to

19  file a response to the SAC. (Dkt No. 36.)   The docket reflects that summons did not actually issue as

20  to defendant Akanno until May 11, 2010.  (Dkt No. 55.)  Dr. Akanno has filed a separate summary

21  judgment motion, which remains under submission.  (Dkt No. 101.)

22           Miller alleges his civil rights were violated when the named defendants manifested deliberate

23  indifference to his serious medical needs.  He summarizes:

24
25              [O]n the morning of October 16, 2007 the plaintiff was in a fight with
                another prisoner and broke his thumb which he [*sic*] was seen by
26              defendant LVN Rufino who refused to treat him for his injuries or his
                broken thumb but made a recommendation that the plaintiff had just
27              dislocated his thumb.   On October 23, 2007, plaintiff was seen by
                defendant Moonga who x-rayed the plaintiff and confirm[ed] [I] had a
28              broken thumb. And wrap[p]ed the thumb in a splint without setting the

-2-                                                        08cv01233

> bone causing my thumb to heal incorrectly.  [D]efendant J. Akanno was notified about my injuries but refused to treat the plaintiff himself.

(Dkt No. 76, 18:9-16.)

The following facts are undisputed.  (*See* Dkt No. 76, pp. 8-15).  Defendant Rufino is a Licensed Vocational Nurse ("LVN") with the State of California Department of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison ("KVSP").  Defendant Moonga is a licensed Registered Nurse ("RN"), also employed by CDCR at KVSP.  Rufino examined Miller after the October 16, 2007 fight when he was asked to clear Miller for transfer to the Administrative Segregation housing unit ("Ad Seg").  Miller appeared to Rufino at the time to have a dislocated right thumb as well as some superficial abrasions on his left hand and left leg.  He did not refer Miller to a doctor or for an x-ray or for any medical treatment.  Rufino prepared a CDCR Form 7219 (Medical Report Of Injury Or Unusual Occurrence) to memorialize the results of his examination and cleared Miller for transfer to Ad Seg. (Dkt No. 65-1, p. 11.)  Rufino had no further contact with Miller.

On October 22, 2007, six days after the incident, Miller requested a medical appointment for further examination of his painful right thumb.  He saw RN Moonga the next day, their only contact. Moonga x-rayed Miller's hand, saw that the proximal right first metacarpal of his thumb was fractured, wrapped it with a splint, and gave him pain medication.  Miller alleges his thumb healed improperly because the break was never set.[2]  He blames that outcome on a lack of proper medical treatment by the named defendants, in violation of his Eighth Amendment rights.

> I did not see a doctor [u]ntil[] five months later when I was seen by MARSHALL[ S.] LEWIS, M.D. an orthopedic doctor who told me because this injury was not treated at the proper time it [*sic*] was nothing he could do about this injury as f[a]r as surgery was concern[ed].  But he would provide me with a thumbkeeper brace which was never given to me back at the prison and I was given an anti[-]inflammatory medication to reduce the swelling that was still there after (6) months[.]

(Dkt No. 76, 6:6-11.)

---

[2]  Miller provides a March 26, 2008 "Initial Comprehensive Orthopedic Consultation" report from the Tehachapi Clinic.  (Dkt No. 76, pp. 43-44.)  It describes the results of Dr. Marshall S. Lewis' orthopedic evaluation of Miller's right thumb.  He notes a "malunion" at the healed fracture site, decreased range of motion, marked pain over the right thumb joint, some deformity, and  impaired range of motion.  (Id..)  He prescribed a thumb-keeper brace and anti-inflammatory drugs. (Id.)  Miller provides no affidavit from Dr. Lewis, or from any other medical expert, expressing any opinion whatsoever regarding Defendants' conduct or standards of care.

-3-

1       Miller identifies as genuine issues of material fact he contends preclude summary judgment:

2   (1) "whether LVN Rufino [k]new of the plaintiff['s] broken thumb or dislocated thumb injury during the

3   7 days delay in which no medical care was provided to the plaintiff" (Dkt No. 76, 20:12-14); (2) whether

4   defendant Moonga who wrap[p]ed the plain[t]iff thumb in a splint, who is the direct cause of the

5   plaintiff injury" (Id., 20:16-17); (3) "whether defendant J. Akanno actually treated the plaintiff for this

6   injury" (Id., 20:19-21); and (4) "a genuine issue of material fact that existed as to the expert testimony

7   of doctor Mar[s]hall [S.] Lewis"[3] (Id., 20:21-23.)

8   **II.    DISCUSSION**

9       **A.    Legal Standards**

10          **1.    Civil Rights Act, 42 U.S.C. § 1983**

11      The Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), " "is not itself a source of substantive

12  rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " Graham v.

13  Connor, 490 U.S. 386, 393-94 (1989) (citation omitted).  "A person 'subjects' another to the deprivation

14  of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

15  in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the

16  deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17  "Liability under section 1983 arises only upon a showing of personal participation by the defendant,"

18  acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right.

19  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no *respondeat superior* liability under

20  Section 1983.  Monell v. Dept. of Soc. Servs, 436 U.S. 658 (1978) (the supervisor of someone who

21  violated a plaintiff's constitutional rights is not made liable for the violation by virtue of that role).

22      Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings

23  drafted by lawyers."  Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (punctuation and citation

24  omitted); *see* Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (*per curiam*) ("A document filed *pro se* is

---

26

27          [3]    Miller represents that Dr. Lewis "would testify that, in treating the plaintiff his Nurse actions disregarded a substantial risk of danger that either was known to them or would be apparent to a reasonable person in their position."  (Dkt No. 76, 21:3-12 (citation omitted).)  However, a conclusory summary of the

28  "probable content" of an expert's unsubstantiated opinion does not satisfy Rule 56 standards.

to be liberally construed;" a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests). However, " 'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.' " Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 ( 9th Cir. 1997) (citation omitted).  Furthermore, the benefit of liberal construction does not entitle prisoners' *pro se* pleadings to receive the benefit of every conceivable doubt, but only to the drawing of reasonable factual inferences.  McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).

## 2.   Prison Litigation Reform Act

The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, modified the processing of *pro se* prisoners' civil rights complaints.  The court may now at any time dismiss an action or portions of it, *sua sponte* or on a party's motion, if the "action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."[4]  42 U.S.C. § 1983e(c); *see also* 28 U.S.C. § 1915.  The PLRA also restricts the availability and extent of remedies prisoners may seek.  For example, recovery for mental or emotional injury suffered while in custody requires "a prior showing of physical injury" that is more than *de minimus*. 42 U.S.C. § 1997e(e); *see* Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002); *see also* Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003); *cf.* Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (no such showing applies to allegations of constitutional violations not premised on mental or emotional injury, such as claims arising under the First Amendment).

## 3.   Summary Judgment Standard Of Review

Any claiming or defending party "may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Rule 56(a), (b).  Summary judgment is properly entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc. 477 U.S. 242,

---

[4]  Defendants do not raise a qualified immunity defense in support of their Motion, and the Court questions whether such a defense would apply in this case.  *See* Saucier v. Katz, 533 U.S. 194, 201 (2001). As discussed below, Miller's Declaration asserts facts which, if proven, could establish Rufino's deliberate indifference to a serious medical need.

256 (1986).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *See* Celotex, 477 U.S. at  323.  The substantive law defining the elements of the claim controls the materiality of facts.  *See* Anderson, 477 U.S. at 248.  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party bears the initial "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The movant is not required to produce evidence negating the non-movant's claims.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885, 888-89 (1990) ("the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues").  If the moving party fails to discharge this initial burden, summary judgment must be denied, "even if no opposing evidentiary matter is presented."  Adickes, 398 U.S. at 159-60.

If the movant carries its burden, the burden shifts to the non-moving party to establish facts beyond the pleadings showing there remains a genuine issue of material fact.  Celotex, 477 U.S. at 324; Adickes, 398 U.S. at 157.  There is no genuine issue for trial if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); *see also* Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) ("To avoid summary judgment, [the plaintiff] was required to present significant probative evidence tending to support her allegations") (punctuation and citations omitted).  The opposing party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Celotex, 477 U.S. at 324, *quoting* Rule 56(e); *see* Taylor, 880 F.2d at 1045 (conclusory allegations or mere assertions are insufficient); *see also* Anderson, 477 U.S. at 249-50, 25 (the opposing party must present probative evidence of specific, material factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party") (citation omitted).

The court accepts the version of material facts most favorable to the non-moving party in ruling on a Rule 56 motion. <u>Anderson</u>, 477 U.S. at 255. The court decides whether there is a genuine issue for trial, but does not make credibility determinations, weigh conflicting evidence, or draw its own inferences, as those functions are reserved for the trier of fact. <u>Id.</u> at 249, 255. Considering the evidence from both sides, "[i]f reasonable minds could differ" and there is "evidence on which the jury could reasonably find for the [non-moving] party," summary judgment for the moving party is improper. <u>Id.</u> at 252. "[W]here the [material] facts specifically averred by [the opposing] party contradict facts specifically averred by the movant, the motion must be denied." <u>Lujan</u>, 497 U.S. at 888. Conversely, summary judgment for the moving party is proper "if, under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250-251; <u>Celotex</u>, 477 U.S. at 325.

**B.**     **Eighth Amendment In Medical Treatment Context**

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006).

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

<u>Wilson v. Seiter</u>, 501 U.S. 291, 298-99 (1991), *quoting* <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).

"A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004). "Deliberate indifference" in this context means the official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Liability thus hinges on the seriousness of the prisoner's medical needs, the nature of the particular defendant's response to those needs, and the defendant's culpable state of mind. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997). The prisoner must demonstrate the existence of a serious medical condition of which the prison official was aware, and the

08cv01233

1   alleged deprivation must be objectively "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834, 837 ("the

2   official must both be aware of the facts from which the inference could be drawn that a substantial risk

3   of harm exists, and he must also draw the inference"); <i>see</i> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05

4   (1976). "[A] serious medical need is present whenever the failure to treat a prisoner's condition could

5   result in further significant injury or the unnecessary and wanton infliction of pain." <u>Clement v. Gomez</u>,

6   298 F.3d 898, 905 (9th Cir.2002). Resolution of a claim that the official has inflicted cruel and unusual

7   punishment necessarily entails "inquiry into the prison official's state of mind" to satisfy the "deliberate

8   indifference" element. <u>Wilson</u>, 501 U.S. at 298-99. "[T]he official must both be aware of the facts from

9   which the inference could be drawn that a substantial risk of harm exists, and he must also draw the

10  inference." <u>Farmer</u>, 511 U.S. at 837

11       Although the defendant's conduct need not have been undertaken for the very purpose of causing

12  harm in order to be found deliberately indifferent, a "sufficiently culpable state of mind" requires that

13  the conduct entailed more than mere negligence. <u>Farmer</u>, 511 U.S. at 837, 847 (a defendant may be

14  found liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk

15  by failing to take reasonable measures to abate it"). Deliberate indifference may be manifested "when

16  prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the

17  way in which prison physicians provide medical care." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir.

18  2006) (the prisoner must show a purposeful act or failure to respond to his pain or medical need and

19  resulting harm caused by the indifference). If the risk of harm was obvious, the trier of fact may infer

20  that a defendant knew of the risk, but obviousness <i>per se</i> will not impart knowledge as a matter of law.

21  <u>Farmer</u>, 511 U.S. at 840-42. Even "[i]f a prison official should have been aware of the risk, but was not,

22  then the official has not violated the Eighth Amendment, no matter how severe the risk." <u>Id.</u> at 834.

23

24       Similarly, a medical professional's negligence in diagnosing or treating a medical condition, even

25  gross negligence, is insufficient to establish deliberate indifference to serious medical needs for Eighth

26  Amendment purposes. <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990) ("more than mere

27  negligence or isolated occurrences" associated with an inmate's complaint of inadequate medical care

28  are required before a prison official's treatment of an inmate amounts to a constitutional violation); <i>see</i>

Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner").  A finding of deliberate indifference requires a "purposeful act or failure to act on the part of the defendant" in response to the inmate's pain or medical need.  Estelle, 429 U.S. at 105-06; see McGuckin, 974 F.2d at 1060-61; see also Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (intentional interference with previously prescribed medical care to inmate with a broken jaw wired shut precluded summary judgment for defendants); cf. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998) (finding claims of alleged delays in administering pain medication, treating broken nose, and providing replacement crutch did not amount to more than negligence).

### C. Miller's Evidence Raises Triable Issues Of Material Fact Regarding Defendant Rufino's Alleged Deliberate Indifference

Miller's SAC alleges as to defendant Rufino:

> On October 16, 2007, Plaintiff was involved in a mutual combat [in] which he received a broke thumb and laceration to his legs and knees and was initially examine[d] by defendant (L.V.N.) Rufino who refuse[d] to send the Plaintiff to be x rayed or give the Plaintiff any pain medication and displayed a disposition of deliberate indifference to Plaintiff['s] medical needs when it was obvious there was still a need of medical treatment or displayed a reckless disregard for excessive risk to my health or well being and his medical findings which [sic] are contradicted by report on 10-22-07 and 3-26-08.

(Dkt No. 37, 3:6-17.)

Rufino describes his LVN duties for the CDCR at KVSP as "observation, examination and treatment of patients in the primary care setting and also observing and determining if inmates are medically fit to be cleared for the Administrative Housing Unit." (Dtk No. 65-2, p. 7, ¶ 2.)  He declares he was acting only in the latter capacity on the one occasion he saw Miller.  (Id., p. 8, ¶ 4: "On October 16, 2007, I examined plaintiff Gerald Lee Miller for the sole purpose of determining Mr. Miller's suitability to be cleared for transfer to the Administrative Segregation Housing Unit following a mutual combat incident with another inmate.").  Rufino describes that process as "a visual examination to determine if the inmate has any life threatening injuries or injuries that require immediate medical attention."  (Id.)  He recorded the results of his examination on a CDCR Form 7219, substantiating that the "Reason" for the report was "Pre AD/SEG Admission" with a "Disposition" notation: "Medically

cleared for Ad-SEG placement, released back to custody," despite the right thumb "dislocation" he observed and documented on the form.  (Id., Exh. A-1 p. 11.)  Rufino also recorded on the form that he did not notify a physician or an RN before releasing Miller back into custody.  (Id.)

To prevail on his Eight Amendment claim, Miller must prove Rufino:  (1) was actually aware of facts from which an inference could be drawn that a substantial risk of harm existed; (2) actually drew the inference; but (3) nevertheless disregarded the risk to his health.  Farmer, 511 U.S. at 837.  Rufino declares he did not believe there was any need to obtain treatment for Miller or to delay his Ad Seg transfer on medical grounds.  "If I had observed any injuries requiring immediate medical care, I would have referred Mr. Miller to the triage nurse or medical doctor."  (Dkt No. 65-2, Exh. A, p. 8, ¶ 6.)  "If I had suspected a broken thumb, I would have recommended an x-ray."  (Id.)  Rufino knew that "[i]nmates housed in the Administrative Housing Unit have access to medical care for any condition or injuries that require medical attention," so that clearing an inmate for transfer there "does not prevent an inmate from obtaining medical care."  (Id. ¶ 7.)  It is undisputed Rufino "had no further contact with Mr. Miller after October 16, 2007, regarding his thumb injury."  (Id., p. 9, ¶ 10.)  It does not appear that Rufino took any step to ensure or facilitate any medical follow-up for Miller's thumb injury.

Defendants contend "there is no evidence that LVN Rufino refused or prevented plaintiff from receiving medical care" or denied Miller "medical care he believed plaintiff needed" and, even if Rufino "was incorrect in his diagnosis of plaintiff's thumb, this is insufficient as a matter of law to establish deliberate indifference."  (Dkt No. 65, 10:3-12.)  They argue Rufino did not know Miller's thumb was broken, and "[t]here is no medical evidence that plaintiff was unsuitable for transfer to the Administrative Segregation." (Id. 10:18-19)  Although Rufino admits he believed Miller's thumb was dislocated, he insists had he "observed any injuries requiring immediate medical care, I would have referred Mr. Miller to the triage nurse or medical doctor."  (Dkt No. 65-2, p. 8, ¶¶ 6, 4.)  "If I had suspected a broken thumb, I would have recommended an x-ray," but since he did not think Miller had a broken thumb, he concluded Miller did not require "immediate medical care."  (Id. 8:16-18, ¶¶ 7-9.)

In addition to their own Declarations, Rufino and Moonga provide a Declaration from Dr  S. Lopez in support of their Motion.  (Dkt No. 65-1, pp. 16-18.)  Dr. Lopez  is a licensed Doctor of

1  Osteopathic Medicine and has been the Chief Medical Officer at KVSP since 2007.  (Id. ¶¶ 1-3.)  In that

2  capacity, Dr. Lopez declares he is "often asked to review patient's [sic] medical records and render

3  opinions regarding treatment."  (Id. ¶ 4.)  He concluded from his review of Miller's KVSP medical

4  records that "both LVN Rufino['s] and RN Moonga's actions and recommendations were appropriate."

5  (Id. ¶ 12.) He describes the procedures in effect when "[c]ustody staff requested nursing staff to examine

6  Mr. Miller for clearance to" Ad Seg.  (Id. ¶ 5.)

> 6.    The medical staff, including Registered Nurses (RN) and Licensed Vocational Nurses (LVN), routinely conducts examinations for the purpose of determining if an inmate is medically fit for transfer to [Ad Seg].  In October 2007, **the procedure** to clear an inmate for [Ad Seg] was a **visual examination** of the inmate to determine if the inmate has any life threatening injuries **or injuries that require immediate medical attention**.  If an inmate has life threatening injuries **or injuries that require immediate medical care, the inmate is referred for further medical treatment** and will not be cleared for transfer to [Ad Seg].  At the conclusion of the examination, a CDCR 7219 (Medical Report of Injury or Unusual Occurrence) is prepared.  **If there are questionable findings regarding the examination of an inmate, a RN co-signs the CDCR 7219 and conducts an independent examination of the inmate**.

(Dkt No. 65-1, p. 17 (emphasis added).)

    Dr. Lopez reviewed the CDCR Form 7219 Rufino prepared, documenting that Miller had, among other things, a dislocated thumb.  (Dkt No. 65-1, p. 17, ¶ 7.)  He gives his professional opinion that thumb fractures and dislocations are not readily distinguishable on visual examination.  Rufino entered "N/A" in the form boxes labeled "RN Notified" and "Physician Notified."  Dr. Lopez concludes that "*because* a Registered Nurse did not co-sign the 7219 or conduct a further examination" there "is  no evidence of questionable findings."  (Id. (emphasis added); *see* Lodg. 65, 6:1-2, relying on the Lopez Declaration ¶ 7.)  However, that evidence also permits the reasonable inference no RN or physician examined Miller because Rufino did not refer Miller's thumb injury to anyone else's attention, despite the visual similarities between thumb fractures and thumb dislocations and his belief Miller's was dislocated.  Dr. Lopez does not state that Rufino's dislocation diagnosis was not questionable.  Nor does he declare that a dislocated thumb, unlike a broken thumb, requires no immediate medical attention.  Dr. Lopez confirms Rufino's representations that inmates housed in Ad Seg "have access to medical care for any conditions or injuries that require medical attention," and the "determination to clear an inmate

1   for transfer to [Ad Seg] does not prevent an inmate from obtaining medical care." (Dkt No. 65-1, p. 17,

2   ¶ 10.)  Nevertheless, Rufino did not provide any treatment for Miller's injured thumb or for his pain at

3   the time and arranged for no follow-up care for the dislocation he believed Miller had suffered..

4        The evidence confirms Rufino was mistaken in his diagnosis.  Defendants do not dispute that

5   a broken thumb is a serious medical condition.  Rufino infers that because he did not know Miller's

6   thumb was broken, he cannot be found deliberately indifferent to a serious medical need.  Defendants'

7   focus on Miller's actual injury presupposes the dubious assumption that unlike a broken thumb, a

8   dislocated thumb is not a serious medical condition requiring immediate attention.  Moreover, "a serious

9   medical need is present whenever the failure to treat a prisoner's condition could result in further

10  significant injury or the unnecessary and wanton infliction of pain."  Clement, 298 F.3d at 905.  Even

11  if a failure to refer for confirmation of a questionable diagnosis may constitute mere negligence, an

12  intentional failure to alleviate pain can support a finding of unconstitutionally deliberate indifference.

13       Miller's Declaration contradicts certain material facts posited by Defendants as "undisputed."

14  (Dkt No. 76, pp. 2-7.)  Rufino noted on the CDCR 7219 form that Miller "would not cooperate with the

15  subjective portion of the examination."  Defendants seem to suggest that Rufino was therefore justified

16  in not believing Miller was in need of immediate medical treatment.  (Dkt No. 65, 6:10-11)  They cite

17  as supporting evidence the Lopez Declaration ¶ 9 and the Rufino Declaration, Dkt No. 65-2, Exh. A.

18  However, Dr. Lopez has no personal knowledge of the conduct of Rufino's examination of Miller.

19  Rufion's Declaration does not mention Miller's demeanor during the examination nor does he explain

20  what he meant by the notation Miller was "not cooperative with the subjective portion."  Miller declares

21  he repeatedly insisted to Rufino that he had broken his thumb, based on the pain and numbness he was

22  experiencing, and that he "needed to see a doctor" for "medical treatment." (Dkt No. 76,  p. 3,  ¶ 8.)  He

23  declares he "was in so much pain that I had a bowel movement and my thumb had to be broke because

24  of this pain that I was in and the way it looked and felt," and it "was obvious that my thumb was broke."

25  (Id., pp. 3-4, ¶ 10.)  He "begged" Rufino for pain medication and to be taken to x-ray.  (Id., p. 4, ¶ 12.)

27          Defendant O. RUFION [*sic*] deliberately told me that I would-not be
             getting anything for these injuries and I would-not be seeing any body
28          else for these injuries and this was my punishment. . . . [¶]  Defendant O.

08cv01233

1

2

3

> RUFION still refuse[d] to treat me for these injuries by not giv[ing] me some pain medication and or sending me to be x-ray[ed] and would-not order follow-up treatment to his diagnosis of me just having a dislocated thumb. . . .

(Dkt No. 76, p. 4, ¶¶ 11, 15.)

4

5

6

7

At a minimum, the evidence establishes Rufino believed Miller had a dislocated thumb.  Rufino's contention he did not know the thumb was broken does not dispose of the question whether a dislocated thumb qualifies as a condition requiring immediate medical attention, like a fractured bone.  He does not dispute he did not recommend an x-ray, he made no referral for the medical follow-up Miller could pursue while in Ad Seg, and he did not treat Miller's pain complaints in any manner.  Miller contends he should have received immediate medical treatment for his "obvious broken thumb or dislocated thumb," an x-ray, and pain medication, and a physician should have been consulted to make a medical judgment whether his thumb was broken or dislocated.  (Dkt No. 76, pp. 16-17.)  He characterizes Rufino's conduct as a "complete denial of medical treatment" resulting in "disfigurement to his broken thumb and los[s] of movement" and "great pain of body and mind" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt No. 37, 2:2:27-3:4.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Considering the evidence from both sides and accepting the version of material facts most favorable to the non-moving party, the Court finds Miller has carried his burden to identify genuine issues for trial.  Anderson, 477 U.S. at 255.   While expressing no opinion on the ultimate outcome, from Rufino's admission he believed Miller had a dislocated thumb and his alleged remark that denial of pain medication and treatment for that injury was Miller's "punishment," if Miller proves his allegations, a fact-finder could conclude Rufino was both "aware of the facts from which the inference could be drawn that a substantial risk of harm exist[ed]" and that he "also dr[e]w the inference," establishing interference with needed medical treatment and a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 837; Jett, 439 F.3d at 1096.  There is "evidence on which the jury could reasonably find for the [non-moving] party."  Anderson, 477 U.S. at 252.  Material facts "specifically averred by [the opposing] party contradict facts specifically averred by the movant," requiring that the Motion be **DENIED** as to defendant Rufino.  Lujan, 497 U.S. at 888.

28

**D.**     **Miller's Evidence Raises No Triable Issue Of Material Fact Regarding Defendant Moonga's Alleged Deliberate Indifference**

Miller contends in his Opposition Declaration that because Rufino had ordered no "follow-up" treatment to his diagnosis" of a dislocated thumb, he "filed an administrative appeal pointing out that defendant O. RUFINO had denied me medical treatment and I was still in need of medical care." (Dkt No. 76, p. 4, ¶ 16: "[A]t that point I had suffer[ed] 7 days with-out any pain medication [or] medical help.") He was seen the next day by defendant Moonga.  (Id. p. 5, ¶ 18.) Miller summarizes his claim against Moonga:

> On October 23, 2007 I was seen by defendant MOONGA a[] registered nurse and he x-ray[ed] my thumb and it was confirm[ed] that I had a fracture[d] right thumb. [¶] Defendant MOONGA was the direct cause of this injury because he wrap[p]ed the bone toge[]her with-out setting them first causing them to heal in a 30 degree's augulation [*sic*] of the first metacarpal and the fracture to heal[] with a malunion. . . .

(Dkt No. 76, p. 5, ¶¶ 20-21; *see also* SAC Dkt No. 37, 3:19-4:9.)

It is undisputed Moonga was involved in the care of Miller's thumb only on that single occasion. (Dkt No. 65-2 ¶ 4.) Moonga declares that at no time did he refuse Miller medical care or prevent Miller from receiving medical care he believed Miller required.  (Dkt No. 65-1, p. 14, ¶¶ 5-7.)  He describes:

> On October 22, 2007, Mr. Miller requested health care services. Mr; Miller claimed to have been in mutual combat on A yard and believed his thumb was broken. On October 23, 2007, I examined Mr. Miller's right hand and noted swelling.  I then advised J. Akanno, M.D., a physician and surgeon at the facility, of plaintiff's reported history and condition. Dr. Akanno ordered an X-ray of Mr. Miller's right hand and also prescribed 800 mg. of motrin, taken three times a day, for 30 days to relieve pain.  I had no further involvement in plaintiff's care.

(Dkt No. 65-1,  pp. 13-14, ¶ 4.)

Miller has not carried his burden to offer evidence  from which a trier of fact could reasonably infer that Moonga's conduct was medically unacceptable under the circumstances and manifested deliberate indifference to an excessive risk to his health.  *See* Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.  Miller admits "it was Nurse Moonga who x-rayed the plaintiff and wrap[p]ed the plaintiff['s] thumb in a splint" and provided  him with pain medication.  (Dkt No. 76, 14:12-23, 15:8-10.)  An x-ray, correct diagnosis of a fracture, a splint, and pain medication are indisputably "medical

1  treatment."  Dr. Lopez opined in his Declaration:  "This is the appropriate treatment for a suspected

2  thumb fracture." (Dkt No. 65-1, 18:17.)  Miller's own allegations dispose of his characterization that

3  Moonga's conduct constitutes "a complete denial of medical treatment." (Id., 15:14-15).

4      Miller purports to identify as a genuine issue of material fact "whether defendant Moonga who

5  wrap[p]ed the plain[tiff's] thumb in a splint .. . is the direct cause of the plaintiff['s] injury" (Dkt No. 76,

6  20:16-18), alleging Moonga "was reckless[] in his treatment of the plaintiff broke thumb and is the direct

7  cause of the plaintiff injury [w]hen he wrap[p]ed the pl[a]intiff thumb in a splint with-out setting the

8  bone first." (Id., 5:6-8.)  He thus simultaneously asserts the contradictory propositions that he received

9  no medical treatment from Moonga and that he received "reckless" medical treatment from Moonga.

10  In any event, an isolated instance of negligence or even medical malpractice is conduct insufficient as

11  a matter of law to sustain a claim for an Eighth Amendment violation.  Farmer, 511 U.S. at 834-42; see

12  Estelle, 429 U.S. at 105-06; see also Wood, 900 F.2d at 1334.

13      Miller also states Moonga "told me that I would be seeing a doctor in a few days." (Dkt No. 76,

14  p. 5,  ¶ 22.)  When that did not happen, Miller "put in another medical request" on October 31, 2007,

15  provided as Exhibit D to his Declaration, then again on November 7, 2007 (Exhibit E) "because I had

16  not been seen by a doctor to have my thumb set." (Id. ¶¶ 22-23.)  He alleges he received no therapy or

17  follow-up treatment for his thumb after being treated once by Moonga, "leaving the plaintiff['s] thumb

18  to heal incorrectly." (Dkt No. 76, 23:27; Id. at 24:1-3 ("There is no evidence that the plaintiff received

19  any treatment for his thumb after he was given a stick and a bandage and 30 days supply of pain

20  medication").).  To the extent he blames Moonga for not ensuring he was seen by a "doctor in a few

21  days," he alleges no more than possible negligence.  Moreover, Miller expressly attributes responsibility

22  for the delay to Dr. Akanno:  "Defendant J. Akanno disposition of (deliberate indifference) to

23  Plaintiff['s] medical needs in a 180 days delay in medical treatment leaving the Plaintiff['s] thumb

24  disfigure[d] and show[ed] a clearly reckless knowingly disregards of excessive risk to my health or well

25  being." (Dkt No. 37, 3:19-4:9.)  Disagreement over responsibility for scheduling a follow-up

26  appointment is insufficient to raise a material factual dispute on the deliberate indifference element of

27  an Eighth Amendment claim.  Miller's conclusory allegations cannot sustain his Section 1983 claim.

28

He offers no evidence from which a reasonable factfinder could infer Moonga "purposefully ignore[d] or failed to respond to [plaintiff's] pain or possible medical need." McGuckin, 974 F.2d at 1060. Summary judgment for defendant Moonga is accordingly **GRANTED.**

**E.    Retaliation, Conspiracy, And Injunctive Relief Claims Dismissed**

In addition to his Eighth Amendment claim, Miller's SAC also seeks injunctive relief associated with a "Retaliation and Conspiracy" claim.  In support of that claim, he alleges  prison officials other than the defendants he names in this action purportedly withheld his personal and legal mail, interfered with the administrative appeals process, and harassed him.  (Dkt No. 37, 5:12-7:24.)  Defendants understandably do not address that claim in their Motion.

The Court *sua sponte* addresses and disposes of that claim here.  To prevail on a retaliation claim, Miller must plead and prove:  (1) a particular state actor took some adverse action against him; (2) the adverse action was taken because he engaged in conduct protected by the First Amendment; (3) the adverse action actually chilled the exercise of his First Amendment rights; and (4) the adverse action did not reasonably advance a legitimate penological purpose.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Miller does not name as defendants in this action any of the correctional officers he identifies in the Retaliation claim allegations, and he does not link the alleged retaliation and conspiracy conduct to any act or omission by any of the three medical personnel defendants he does name.  Similarly, his allegation within the statement of that claim that the "department of corrections state wide" has "a practice an[d] a custom . . . to deny him medical treatment and to withhold his mail" (Dkt No. 37, 7:1-3) also fails to state a claim against any named defendant.[5]  Accordingly, the Court *sua sponte* **DISMISSES** the Retaliation And Conspiracy cause of action, as well as all associated injunctive relief requests, for failure to state a claim upon which relief can be granted.[6]  42 U.S.C. § 1983e(c).

---

[5]  Miller declares the CDCR has a "practice to deny me medical treatment" and alleges retaliation "by the prison grapevine where they have used the code of silence to denied [*sic*] me medical treatment" due to his "correspondence with the honorable judge THELTON HENDERSON over the years with his efforts to bring better health care to the state of [C]alifornia prison system. . . ."  (Dkt No. 76, 6:14-23.)

[6]  In an August 6, 2010 Order Following Status Conference, the magistrate judge assigned to this case, ordered prison officials to assist Miller in obtaining his missing legal property and to report back to the court. (Dkt No. 87.)  That intervention should resolve that aspect of Miller's complaint.

-16-

1    **III.    CONCLUSION AND ORDER**

2          For all the foregoing reasons, **IT IS HEREBY ORDERED**:

3          1.     The Court *sua sponte* **DISMISSES** Miller's Retaliation And Conspiracy claim and prayer

4    for injunctive relief  for failure to state a claim against any of the named defendants.

5          2.      Defendant Moonga's Motion For Summary Judgment  is **GRANTED**, as Miller has not

6    carried his burden to raise triable issues of material fact regarding Moonga's alleged deliberate

7    indifference to a serious medical need, and he is entitled to judgment as a matter of law.

8          3.      Defendant Rufino's Motion For Summary Judgment is **DENIED**, as Miller has carried

9    his burden to raise triable issues of material fact regarding Rufino's alleged deliberate indifference to a

10   serious medical need.

11         4.      The Clerk of Court is hereby instructed to **CORRECT** the spelling of defendant Rufino's

12   name in the court's docket of this case.

13         **IT IS SO ORDERED.**

14

15   DATED:  March 14, 2011

16

17                                          Honorable Barry Ted Moskowitz
                                            United States District Judge
18

19

20

21

22

23

24

25

26

27

28

08cv01233