1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                         **EASTERN DISTRICT OF CALIFORNIA**

10                               **FRESNO DIVISION**

11

| | |
|---|---|
| 12 **GERALD L. MILLER, JR.,**<br>**CDCR #C-92075,** | Civil No.    08cv01233-BTM(WMC) |
| 13 | |
| 14                 **Plaintiff,** | **ORDER GRANTING DEFENDANT**<br>**AKANNO'S MOTION FOR SUMMARY** |
| 15          **vs.** | **JUDGMENT** |
| 16 **O. RUFION,** *et al.*, | **(Dkt No. 101)** |
| 17               **Defendants.** | |

18

19        Plaintiff Gerald L. Miller, Jr. ("Miller"), a state prisoner proceeding *pro se* and *in forma pauperis*

20 with a Second Amended Prisoner Civil Rights Complaint pursuant to 42 U.S.C. § 1983, alleges he was

21 denied medical treatment for a broken thumb he incurred during a fight with another inmate in October

22 2007. He names as defendants three of the prison's medical staff members, in their official and individual

23 capacities, seeking compensatory damages, punitive damages, and injunctive relief. (Dkt No. 37, 8:1-8.)

24 Two of the three named defendants previously filed a Motion For Summary Judgment (Dkt No. 65),

25 which was decided on March 14, 2011. (Dkt No. 122.) The third named defendant, Dr. J. Akanno, now

26 moves separately for summary judgment ("Motion") pursuant to Fed.R.Civ.P. 56 on the Eighth

27 Amendment claim alleged against him. (Dkt No. 101.) Miller filed an Opposition (Dkt No. 109), and

28

1   Dr. Akanno filed a Reply (Dkt No. 111).  After careful consideration of the parties' briefing and exhibits

2   in light of controlling legal authority, the Court finds that Miller fails to substantiate a triable issue of

3   material fact with respect to his allegation that Dr. Akanno was deliberately indifferent to his serious

4   medical needs.  For the reasons discussed below, the defendant is entitled to judgment in his favor as

5   a matter of law, and the Court therefore **GRANTS** the Motion.

6   **I.       BACKGROUND**

7           Miller filed his civil rights Complaint initiating this action on August 20, 2008, naming as

8   defendants O. Rufino, a licensed vocational nurse, and G. Moonga, a registered nurse, both medical staff

9   at Kern Valley State Prison, then filed a First Amended Complaint on September 26, 2008, naming the

10  same two defendants before they appeared in the action.  (Dkt No. 8.)  On November 26, 2008, this

11  matter was reassigned for all purposes from the bench of the Eastern District of California to the

12  undersigned visiting judge.  (Dkt No. 9.)  By Order entered January 26, 2009, the Court directed the U.S.

13  Marshal Service to serve the defendants with the amended complaint.  (Dkt No. 17.)  They filed an

14  Answer on April 14, 2009.  (Dkt No. 24.)  By Order entered December 15, 2009, the Court granted

15  Miller's request for leave to file a Second Amended Complaint ("SAC") to add a third defendant, Dr.

16  J. Akanno, instructed the Clerk of Court to add the new defendant to the docket and to issue the

17  appropriate summons with the documents necessary for the U.S. Marshal Service to serve the new

18  defendant, and directed the defendants to file a response to the SAC no later than January 29, 2010.  (Dkt

19  No. 36.)  On January 28, 2010, defendants Rufino and Moonga (only) filed an Answer.  (Dkt No. 40.)

20  The docket reflects that summons did not actually issue as to Dr. Akanno until May 11, 2010.  (Dkt No.

21  55.)  He filed a separate Answer on July 15, 2010.  (Dkt No. 78.)  On August 6, 2010, the magistrate

22  judge assigned to this case ordered discovery reopened as to defendant Akanno only, and set a deadline

23  of November 3, 2010 for him to file any pretrial motion.  (Dkt No. 86.)  Dr. Akanno timely filed this

24  Motion on October 20, 2010.  (Dkt No. 101.)

25

26          The following pertinent facts are undisputed.  Dr. Akanno is a medical doctor employed by the

27  California Department of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison who was

28  assigned to A-yard at the time Miller was injured.  (Dkt No. 109, 10:12-27.)  On October 16, 2007,

1    Miller was involved in a mutual combat fight with another prisoner on A-Yard. (Id., 2:21-22, 11:11-14.)

2    He was taken to the A Facility medical clinic where he was seen by co-defendant O. Rufino, a licensed

3    vocational nurse employed by the prison.  (Id., 2:24-28.)  Defendant Rufino noted Miller had some

4    superficial abrasions and what appeared to him to be a dislocated thumb, although Miller expressed his

5    personal belief the thumb was broken.  (Id., 3:12-23.)   Rufino cleared Miller for transfer to the

6    Administrative Segregation Housing Unit ("Ad Seg").

7        Miller saw co-defendant RN Moonga on October 23, 2007, the day after he requested a medical

8    appointment complaining of continued pain from his thumb injury, apparently while he was still

9    temporarily housed in the Ad Seg unit. (Dkt No. 109, 5:10-22.) There is no dispute that the "first notice

10   Dr. Akanno had of Plaintiff's right thumb injury" was when RN Moonga described Miller's symptoms

11   to him that day.  "In response to Plaintiff's complaints, Dr. Akanno ordered an x-ray of the right hand

12   and prescribed pain medication." (Id., 13:10-28.)  At the October 23, 2007 appointment, Moonga had

13   the x-ray Dr. Akanno ordered taken and wrapped Miller's thumb in a splint. (Id., 17:3-4.) Miller alleges

14   he did not see a doctor until five months later, when Dr. Marshall Lewis, M.D. examined him at a clinic

15   outside the prison, apparently too late for surgery to correct the manner in which the thumb had healed.

16   (Id., 5:17-18, 8:7-11.) Dr. Akanno moves for summary judgment on grounds Miller fails to proffer any

17   evidence providing a factual basis from which a reasonable inference can be drawn that he was

18   deliberately indifferent to a serious medical need in violation of the Eighth Amendment. (Dkt No. 111.)

19

20  **II.**      **DISCUSSION**

21       **A.**     **Legal Standards**

22           **1.**    **Civil Rights Act, 42 U.S.C. § 1983**

23        The Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), creates a procedure to vindicate federal

24   rights violations.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("[Section] 1983 'is not itself a

25   source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

26   conferred' ") (citation omitted).  "A person 'subjects' another to the deprivation of a constitutional right,

27   within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative

28   acts, or omits to perform an act which he is legally required to do that causes the deprivation of which

1  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "Liability under section 1983

2  arises only upon a showing of personal participation by the defendant," acting under color of state law,

3  that deprived the plaintiff of a constitutional or federal statutory right.  Taylor v. List, 880 F.2d 1040,

4  1045 (9th Cir. 1989).  There is no *respondeat superior* liability under Section 1983.  Monell v. Dept.

5  of Soc. Servs, 436 U.S. 658 (1978) (the supervisor of someone who allegedly violated a plaintiff's

6  constitutional rights is not made liable for the violation by virtue of that role).

7        Federal courts hold *pro se* litigants' pleadings to "less stringent standards than formal pleadings

8  drafted by lawyers."  Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (punctuation and citation

9  omitted); *see* Erickson v. Pardus, 551 U.S. 89, 93, 94 (2007) (*per curiam*) ("A document filed *pro se* is

10 to be liberally construed;" a plaintiff need only give the defendant fair notice of the claim and the

11 grounds on which it rests).  However, " 'a liberal interpretation of a civil rights complaint may not supply

12 essential elements of the claim that were not initially pled.' "  Bruns v. Nat'l Credit Union Admin., 122

13 F.3d 1251, 1257 ( 9th Cir. 1997) (citation omitted).  Furthermore, the advantage of liberal construction

14 does not entitle prisoners' *pro se* pleadings to "the benefit of every conceivable doubt," but only to the

15 drawing of reasonable factual inferences.  McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).

16

17                    **2.      Prison Litigation Reform Act**

18        The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C.  § 1997e, modified the

19 processing of *pro se* prisoners' civil rights complaints.  The court may now at any time dismiss an action

20 or portions of it, *sua sponte* or on a party's motion, if the "action is frivolous, malicious, fails to state a

21 claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from

22 such relief."  42 U.S.C. § 1983e(c); *see also* 28 U.S.C. § 1915.  The PLRA also restricts the availability

23 and extent of remedies prisoners may seek in civil rights actions.  For example, recovery for mental or

24 emotional injury suffered while in custody requires "a prior showing of physical injury" that is more than

25 *de minimus*.  42 U.S.C. § 1997e(e); *see* Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002); *see also*

26 Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003); *cf.* Canell v. Lightner, 143 F.3d 1210, 1213 (9th

27 Cir. 1998) (no such showing applies to allegations of constitutional violations not premised on mental

28 or emotional injury, such as claims arising under the First Amendment).

1

### 3.    Summary Judgment Standard Of Review

2        Any claiming or defending party "may move, with or without supporting affidavits, for summary

3 judgment on all or part of the claim." Rule 56(a), (b).  Summary judgment is properly entered "if the

4 pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

5 issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c);

6 *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc. 477 U.S. 242,

7 256 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial

8 to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306

9 (9th Cir. 1982).   The substantive law defining the elements of the claim controls the materiality of facts.

10 *See* Anderson, 477 U.S. at 248.  A complete failure of proof concerning an essential element of the non-

11 moving party's case necessarily renders all other facts immaterial.  *See* Celotex, 477 U.S. at  323.

12        The moving party bears the initial "burden of showing the absence of a genuine issue as to any

13 material fact, and for these purposes the material it lodged must be viewed in the light most favorable

14 to the opposing party."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The movant is not

15 required to produce evidence negating the non-movant's claims.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S.

16 871, 885, 888-89 (1990) ("the purpose of Rule 56 is to enable a party who believes there is no genuine

17 dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of

18 that fact before the lengthy process of litigation continues").  If the moving party fails to discharge that

19 burden, summary judgment must be denied, "even if no opposing evidentiary matter is presented."

20

21 Adickes, 398 U.S. at 159-60.

22        If the movant carries its burden, the burden shifts to the non-moving party to establish facts

23 beyond the pleadings showing there remains a genuine issue of material fact so that summary judgment

24 is not appropriate.  Celotex, 477 U.S. at 324; Adickes, 398 U.S. at 157.  The "mere existence of a

25 scintilla of evidence in support of the non-moving party's position is not sufficient" to create a genuine

26 issue for trial.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); *see*

27 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (there is no genuine

28 issue for trial if, on the record taken as a whole, a rational trier of fact could not find in favor of the party

opposing the motion); *see also* <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1218 (9th Cir. 2007) ("To avoid summary judgment, [the plaintiff] was required to present significant probative evidence tending to support her allegations") (punctuation and citations omitted).  The opposing party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Celotex</u>, 477 U.S. at 324, *quoting* Fed. R. Civ. P. 56(e).  The opposing party may not rest on mere assertions or conclusory allegations.  *See* <u>Taylor</u>, 880 F.2d at 1045.  Rather, that party must present evidence of specific and material factual disputes that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 249-50, 256 (citation omitted).

The court accepts the version of disputed facts most favorable to the non-moving party in ruling on a Rule 56 motion.  <u>Anderson</u>, 477 U.S. at 255.  The court does not make credibility determinations, weigh conflicting evidence, or draw its own inferences, as those are functions reserved for the trier of fact.  <u>Id.</u> at 249, 255, 249 (the district court's role on summary judgment is merely to determine whether there is a genuine issue for trial).  Considering the evidence from both sides, "[i]f reasonable minds could differ" and there is "evidence on which the jury could reasonably find for the [non-moving] party," summary judgment for the moving party is improper.  <u>Id.</u> at 252.   "[W]here the [material] facts specifically averred by [the opposing] party contradict facts specifically averred by the movant, the motion must be denied."  <u>Lujan</u>, 497 U.S. at 888.  Conversely, summary judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  <u>Anderson</u>, 477 U.S. at 250-251; <u>Celotex</u>, 477 U.S. at 325.

## B.   Summary Judgment Granted For Defendant Dr. Akanno

### 1.   Eighth Amendment In Medical Treatment Context

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006).

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that

conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Wilson v. Seiter, 501 U.S. 291, 298-99 (1991), *quoting* Whitley v. Albers, 475 U.S. 312, 319 (1986); *see also* Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) ("the officials' conduct must constitute 'unnecessary and wanton infliction of pain' before it violates the Eighth Amendment") (punctuation omitted), *quoting* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "Deliberate indifference" means the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Liability thus hinges on the seriousness of the prisoner's medical needs, the nature of the particular defendant's response to those needs, and the defendant's culpable state of mind. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997). "[A] serious medical need is present whenever the 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." ' " Clement v. Gomez, 298 F.3d 898, 905 (9th Cir.2002) (citations omitted).

.    Resolution of a claim "that the official has inflicted cruel and unusual punishment" necessarily entails "inquiry into the prison official's state of mind." Wilson, 501 U.S. at 298-99. "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference" to satisfy the "deliberate indifference" element. Farmer, 511 U.S. at 837. Although the defendant's conduct need not have been undertaken for the very purpose of causing harm, a "sufficiently culpable state of mind" requires that the conduct entailed more than mere negligence. Id. at 837, 847. Nothing less than recklessness in the criminal sense, that is, subjective disregard of a risk of harm of which the actor is actually aware, satisfies the "deliberate indifference" element of an Eighth Amendment claim. Id. at 837.

Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide

-7-

medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (the prisoner must show a purposeful act or failure to respond to his pain or medical need and resulting harm caused by the indifference). If the risk of harm was obvious, the trier of fact may infer that a defendant knew of the risk, but obviousness *per se* will not impart knowledge as a matter of law. Farmer, 511 U.S. at 840-42. Even "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id. at 834.

Liability depends on a "purposeful act or failure to act on the part of the defendant" in response to the inmate's pain or serious medical need. Estelle, 429 U.S. at 105-06; *see* McGuckin, 974 F.2d at 1060-61. Therefore, a medical professional's negligence in diagnosing or treating a medical condition, even gross negligence, is insufficient to establish deliberate indifference for Eighth Amendment purposes. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("more than mere negligence or isolated occurrences" associated with an inmate's complaint of inadequate medical care are required before a prison official's treatment amounts to a constitutional violation). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; *see* Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998) (finding no merit in constitutional claims stemming from alleged delays in administering pain medication, treating broken nose, and providing replacement crutch, because the claims did not amount to more than negligence); *cf.* Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (intentional interference with previously prescribed medical care to inmate with a broken jaw wired shut precluded summary judgment for defendants).

To prevail on his Eight Amendment claim, Miller must prove each individual defendant (1) was actually aware of facts from which an inference could be drawn that a substantial risk of harm existed, (2) actually drew the inference, but (3) nevertheless disregarded the risk to the inmate's health. Farmer, 511 U.S. at 837. Dr. Akanno does not challenge that a broken thumb is a serious medical condition, leaving only the subjective prong of an Eighth Amendment claim for evaluation here, that is, a "purposeful act or failure to respond to a prisoner's pain or possible medical need" intended to deny, delay, or interfere with plaintiff's medical treatment, causing consequent harm. Jett, 439 F.3d at 1096, *citing* McGuckin, 974 F.2d at 1060 *and* Estelle, 429 U.S. at 104.

### 2.   SAC Allegations And Miller's Evidence

Miller filed his SAC in order to name Dr. Akanno as a third defendant.  He states he "was never

seen by defendant J. Akanno" and "did not know [of Dr. Akanno's] involvement [u]ntil after the filing

of this suit."  (Dkt No. 109, 6:16-25, 7:6-10.)  The SAC alleges:

> On October 22, 2007, Defendant Moonga informed J. Akanno
> M.D. a[] physician and surgeon at the Facility of the Plaintiff['s]
> condition that Plaintiff had fracture[d] his right thumb.  Defendant J.
> Akanno order[ed] the plaintiff to be xrayed and a 30-day supply of pain
> medication. Defendant J. Akanno disposition of (deliberate indifference)
> to Plaintiff['s] medical needs in a 180 days delay in medical treatment
> leaving the Plaintiff['s] thumb disfigure[d] and show[ed] a clearly
> reckless knowingly disregards of excessive risk to my health or well
> being.

(Dkt No. 37, 4:1-10.)

The parties provide excerpts from Miller's September 23, 2010 deposition in support of and in

opposition to the Motion.  (Dkt No. 101-1, pp. 10-14; Dkt No. 109, pp. 78-87.)   Miller elaborated his

reasons for pursuing a deliberate indifference claim against Dr. Akanno after he received Interrogatory

responses from defendants Rufino and Moonga:

> Q:  And what do they say that makes you think that Dr. Akanno was
> responsible?
>
> A:  Well, they said that he was advised of my treatment, advised that I
> had a broken thumb.  And he provided x-rays, he was the one that ordered
> the x-rays and the pain medication.  Because those are nurses are not
> really allowed to order pain medication or x-rays.  [¶]  So it was him who
> ordered this.  And by him ordering this, he knew that I needed medical
> treatment at that time.  The damage is because he didn't set my thumb and
> didn't place my thumb in a cast at the proper time and allowed it to heal
> like that.  [¶]  He had an obligation to come in there.  Okay, we got an
> inmate with a broken thumb.  He needs it set.  He had an obligation to
> come in there, set the thumb, place it in a cast.  He didn't do that; he
> didn't provide me any medical treatment. . . .[¶]  And if Dr. Akanno
> wasn't able to set my thumb, he should have called a orthopedics – a bone
> specialist and had them come in and set my thumb.  And that's my
> problem I have with Dr. Akanno.

(Dkt No. 109, 86:11-87:19.)

Miller confirmed that he was housed in the prison's A Yard at the time of the October 16, 2007

incident, and he was taken to the A Yard clinic along with the other inmate participant in the fight.  (Dkt

No. 109, 80:5-12.)  He was seen there only by defendant nurse Rufino that day, who cleared him for

transport to Ad Seg, where he was taken.  (Id., 80:15-81:15.)  After three days, when he hadn't seen

anyone for his swollen thumb, Miller "filed an administrative appeal, pointing out that my thumb was

broken and I needed x-rays and pain medication."  (Id., 82:9-13.)

> A week later [*i.e.*, on October 23, 2007], I was taken to the clinic where I seen Defendant Moonga, and, at that time, Defendant Moonga x-rayed my thumb and provided me with pain medication.  At least I believed it was him doing this.  I didn't know that he made a phone call to Defendant Akanno.  I didn't know at that time.  I didn't find out until discovery.  [¶]  You know, all that time I believed it was Moonga, that he placed a splint on my hand and gave me 30 days' pain medication and told me I would be seeing a doctor within three days.  And I never seen no one after that.

(Dkt No. 109, 82:14-25.)

About five months later, Miller was taken to an outside medical consultant, Dr. Marshall Lewis,

at his Tehachapi clinic.  (Dkt No. 109, 84:1-20.)  Dr. Lewis gave him anti-inflammatory medication to

reduce the swelling that remained in his thumb, took x-rays, and told him "why he couldn't correct the

thumb from the break because it had healed incorrectly, and it healed in a malunion so that I lost

movement, because it healed in the joint."  (Id., 84:21-85:3.)  Miller attaches as Exhibit "C" to his

Opposition two Orthopedic Consultation reports prepared by Dr. Lewis, one dated March 26, 2008 and

the other dated June 11, 2008.  (Dkt No. 109, pp. 51-54.)  The earlier report is an "Initial Comprehensive

Orthopedic Consultation" prepared to evaluate Miller's right first metacarpal.  Dr. Lewis recorded in that

report the patient was injured "when he struck someone in October 2007," and had "sustained a fracture

and was casted for several weeks in the facility."  He noted "[t]he patient continues to have pain and

stiffness in the right thumb and increased difficulty with usage."  Dr. Lewis observed a "malunion" at

the healed fracture site, but attributed no cause or blame for that result.  (Id., pp. 50, 54.)  Dr. Lewis' June

11, 2008 follow-up consultation report recites that day's x-rays revealed "irregularity at the

carpometacarpal joint," as the "fracture did appear to extend to the articular portion of the first

metacarpal."  (Id., p. 51.)  Miller's Exhibit H documentary evidence is discussed below.

### 3.   No Material Issue Of Fact That Dr. Akanno Was Deliberately Indifferent

In support of his Motion, Dr. Akanno provides his own Declaration (Dkt No. 101-1. pp. 6-8),

excerpts from Miller's September 23, 2010 Deposition (Id., pp. 10-14), the Declaration of Dr. Sherry

1    Lopez, Chief Medical Officer at Kern Valley State Prison (Id., pp. 16-18), and his Responses to Miller's

2    Interrogatories (Id., pp. 20-29).  Dr. Akanno declares:

3           4.      I am familiar with plaintiff Gerald Miller's medical treatment
                    regarding a thumb injury sustained in October 2007 and have reviewed
4                   the medical records on this patient subpoenaed from Kern Valley State
                    Prison.    In reviewing the records, I recognized my signature and
5                   handwriting on records regarding a right thumb injury sustained on
                    October 16, 2007, in a mutual combat incident.  I was involved in Mr.
6                   Miller's medical care for that injury on a single occasion.  Because I am
                    not assigned to the medical clinic affiliated with Mr. Miller's housing
7                   unit, I was not assigned to Mr. Miller's medical care and follow-up.  On
                    or about October 23, 2007, on a single occasion, I became involved in the
8                   treatment of Mr. Miller's thumb injury.

9           5.      According to the medical records, Mr. Miller was involved in a
                    mutual combat incident on Oc[to]ber 16, 2007.  According to the CDCR
10                  7219 (Medical Report of Injury or Unusual Occur[re]nce) prepared on
                    October 16, 2007, by LVN Rufino, Mr. Miller had superficial abrasions
11                  to his left leg and left hand, a bloody nose and a dislocated right thumb.
                    Mr. Miller was cleared for transfer to the Administrative Segregation
12                  Housing Unit.  There is no medical evidence that as of October 16, 2007,
                    Mr. Miller had any life threatening injuries requiring immediate medical
13                  attention.  Likewise, there is no medical evidence that as of October 16,
                    2007, Mr. Miller was unsuitable for transfer to the Administrative
14                  Housing Unit.  With regard to Mr. Miller's injuries, there is no
                    documented medical evidence on October 16, 2007, of a fractured thumb.
15

16          6.      On October 22, 2007, Mr. Miller requested a medical appointment
                    for complaint that he had broken his right thumb.  I had no knowledge of
17                  his injury prior to that date.  On Oc[to]ber 23, 2007, I ordered an x-ray of
                    the right hand and prescribed pain medications.  This is the appropriate
18                  and medically accepted treatment for a suspected thumb fracture.

19   (Dkt No. 101-1, p. 7; see also Dr. Akanno's Interrogatory Responses, Dkt No. 101-1, 22:10-28, 23:14-

20   16, 18, 24:3.)

21          Dr. Akanno explains: "The x-ray was ordered to confirm or rule out possible fracture."  (Dkt No.

22   101-1, 23:13-14.)  After an x-ray is taken and interpreted, "then the appropriate treatment could be

23   ordered."  (Id., 22:28-23:1.)  "The x-ray was completed on October 26, 2007," by which time Dr. Akanno

24   represents he "was no longer involved in Plaintiff's care or treatment."  (Id., 23:1-2.)  Although he

25   argues Dr. Akanno remained responsible for his medical care, Miller offers no evidence to refute Dr.

26   Akanno's representations that he was assigned to A-yard in October 2007, where Miller was then housed,

27   but that "[a]fter the October 16, 2007, fight, Mr. Miller was assigned to B-yard," which had its own

28

                                                     -11-                                    08cv01233

1  medical staff, while Dr. Akanno remained assigned to A-yard and not responsible for B-yard inmates'

2  care.  (Dkt No. 101-1, pp. 7-8:  "Because Mr. Miller was not one of my patients on A-yard, I was not

3  assigned to his follow-up care after ordering x-ray.  Instead, Mr. Miller's follow-up care was charged to

4  the doctors on B-yard..")  Moreover, in Dr. Akanno's professional opinion, "[w]ithout knowing the

5  results of the x-ray it would be medically inappropriate to place Plaintiff's thumb in a cast," because even

6  if the x-ray revealed a fracture, "not all thumb fractures require casting."   (Id., 24:5-7.)  He asserts:

7  "There was no medical evidence on the single occasion I was involved in Plaintiff's medical care that

8  casting or a brace was medically appropriate."  (Id., 24:7-9.)

9       In her Declaration in support of Dr. Akanno's Motion, Dr. Sherry Lopez represents she is

10  "familiar with plaintiff Gerald Miller's medial treatment regarding a thumb injury sustained in October

11  2007" through her review of "the medical records subpoenaed from Kern Valley State Prison." (Dkt No.

12  101-1, 17:9-11.)  She substantiates:

13
14       6.       The medical staff, including Registered Nurses (RN) and
        Licensed Vocational Nurses (LVN), routinely conducts examinations for
15       the purpose of determining if an inmate is medically fit for transfer to the
        Administrative Segregation Housing Unit.  At the conclusion of the
16       examination, a CDCR 7219 (Medical Report of Injury or Unusual
        Occurr[e]nce) is prepared.

17       7.       According to the CDCR 7219 prepared on October 16, 2007, by
18       LVN Rufino, Mr. Miller had superficial abrasions to his left leg and left
        hand.  The form also notes Mr. Miller had a bloody nose and a dislocated
19       right thumb.  Mr. Miller was cleared for transfer to the Administrative
        Segregation Housing Unit.

20       8.       There is no medical evidence that as of October 16, 2007, Mr.
21       Miller had any life threatening injuries requiring immediate medical
        attention.  Likewise, there is no medical evidence that as of October 16,
22       2007, Mr. Miller was unsuitable for transfer to the Administrative
        Segregation Housing Unit.

23  (Dkt No. 101-1, 17:13-18:4 ("Based on my review of the medical records, Dr. Akanno's actions and
24  recommendations were appropriate.")

25       In his Opposition, Miller offers his own opinions regarding the treatment response he should
26  have received for his thumb injury, although he lacks any medical qualifications.  (See Dkt No. 101-1,
27  12:17-24, Miller Deposition excerpts substantiating he has no medical training, has taken no classes in

28

any sort of medicine or health care, and has no certification for any health-related issue.)  Miller summarily contends that although Dr. Akanno ordered pain medication and an x-ray as soon as Miller's complaint was first brought to his attention, even before the x-ray results were known:  "defendant Akanno had an obligation to provide Plaintiff with immediate medical care upon his order for x-rays and pain medication and this would include casting or a medical brace" (Dkt No. 109, 15:2-5); "Dr. Akanno knew the Plaintiff had a fracture[d] thumb and failed to treat the Plaintiff by casting and setting the Plaintiff's thumb" (Id., 18:7-9); and "Defendant Dr. Akanno knew that the Plaintiff had a fracture[d] thumb and failed to treat[] him personally when defendant Moonga inform[ed] him of my fracture[d] thumb and cause[d] the Plaintiff['s] thumb to heal in a malunion" (Id., 18:28-19:4).  Dr. Akanno denies any such "knowledge" or obligation to treat Miller at the initial evaluation stage other than with pain medication and the obtaining of a diagnostic x-ray.

Miller contends Dr. Lewis'  findings recorded in his consultation reports from March and June 2008, summarized above, create a genuine issue of material fact regarding Defendants' Eighth Amendment liability. He speculates from the "malunion" Dr. Lewis identified at the healed fracture site five months after the injury that Dr. Lewis would testify Defendants' conduct violated his constitutional rights.  However, Miller offers no more than conjecture regarding Dr. Lewis' "possible testimony" (Dkt No. 109, 33:23-24), or the "probable content of his testimony" (Id., 33:28), unsupported by evidence of any actual expert opinion Dr. Lewis may have regarding Dr. Akanno's response to the description he was given of Miller's injury.  For example, in his Statement Of Disputed Factual Issues filed in support of his Opposition, Miller frames the issue:  "Whether the testimony of doctor Marshall[] Lewis will state a claim of deliberate indifference to the Plaintiff['s] medical needs defendants J. Akanno, Moonga, & Rufino where the Plaintiff['] fracture heal[ed] with a malunion and some deformity." (Dkt No. 109, 25:9-13.)  His unsubstantiated hope regarding "the probable content" of a potential witness's testimony falls short of his burden on summary judgment.  He provides no affidavit from Dr. Lewis, or evidence from any other medical expert, expressing any professional opinion whatsoever regarding Dr. Akanno's conduct.  Moreover, "deliberate indifference" requires that the defendant "knows of and disregards" a serious health issue." Farmer, 511 U.S. at 837; Wood, 900 F.2d at 1334.  The evidentiary record reflects

-13-                                                      08cv01233

Dr. Akanno did not "disregard" Miller's medical complaints– instead, he acted to alleviate his pain with prescription medication and began the diagnostic process.  The evidentiary import of Dr. Lewis' reports is accordingly limited to factual support for Miller's contention his thumb healed imperfectly.  Even if one could draw an inference from that result that the injury was neglected within the prison medical system, neither negligence nor medical malpractice is sufficient to sustain an Eighth Amendment claim. *See* Estelle, 429 U.S. at 106; Wood, 900 F.2d at 1334.

Moreover, Dr. Akanno's exposure to Miller's medical condition was limited to a single, second-hand consultation, a fact incompatible with the "obduracy and wantonness" necessary to find an Eighth Amendment violation.  Wilson, 501 U.S. at 298-99.  It is undisputed Dr. Akanno never examined Miller. Dr. Akanno declares:  prior to October 22, 2007, when "Mr. Miller requested a medical appointment for complaint that he had broken his right thumb," he "had no knowledge of his injury" (Dkt No. 101-1:22-23); "there is no documented evidence on October 16, 2007," the date of the mutual combat incident, "of a fractured thumb" (Id., 7:20-21); and on "October 23, 2007, I ordered an x-ray of the right hand and prescribed pain medications, . . . the appropriate and medically accepted treatment for suspected thumb fractures" (Id., 7:23-25).  Miller's transfer to B-yard placed him under the auspices of other medical care providers.  The scope of Miller's complaint against Dr. Akanno is thus circumscribed by his lay opinion that the ordering of an x-ray and pain medication do not constitute medical care, Dr. Akanno should have known his thumb was broken and should have set the bone immediately on October 23, 2007, before the x-ray results were obtained, or on October 26, 2007, the date of a "follow-up report" provided as part of Exhibit H to his Opposition.  (Dkt No. 109 7:22-26.)

Miller's Exhibit H is comprised of four documents.  One is a Department of Corrections "Physician's Orders" form directed to the pharmacy, completed for "Miller, G" by Dr. Akanno and dated October 23, 2007, prescribing a 30-day supply of Motrin, 800 mg.  (Dkt No. 109, p. 90.)  A second "Physician's Orders" form, also dated October 23, 2007, instructs Miller is to have an x-ray taken of his right hand ordered by Dr. Akanno.   (Id., p. 91.)  A third document is a brief written report from Kern Radiology Medical Group in Bakersfield, California directed to Kern Valley State Prison, bearing a "D" date of October 26, 2007 (possibly a "diagnosis" date) and a "T" date of October 29, 2007 (possibly a

"transmission" date). (Dkt No. 109, p. 89.) That document, signed by Jeffrey K. Child, M.D., identifies

the patient as "Miller, G.", the subject matter as "INTERPRETATION OF OUTSIDE FILMS:  RIGHT

HAND:  10/26/07", and the "Referring Physician" as "JONATHAN E. AKANNO, M.D. " (Id.) The

"Interpretation" portion of the text reads, in its entirety:

> There is an acute fracture through the proximal first metacarpal metaphysis with slight medial angulation of the distal fracture fragment. No other fractures.  The remaining bones and joints are atraumatic and nonosteoarthritic.  There are no marginal or subchondral erosions.

(Dkt No. 109, p. 89.)

The only reasonable inferences to be drawn from the Radiology Medical Group document are

that the x-ray Dr. Akanno ordered was transmitted to a medical facility outside the prison for

interpretation and diagnosis, a process that apparently was not completed until October 26, 2007, three

days after thereafter.  A fourth document in Miller's Opposition Exhibit H is an "Interdisciplinary

Progress Notes" form dated "10-26-07" bearing a "Nurse Signature" and noting "splint to R thumb," with

two pre-printed boxes checked:  "Followup with MD within 5 days;" and "Follow up with MD/RN as

needed."  (Dkt No. 109, p. 92.)  No indication on that form suggests it was prepared by or for Dr.

Akanno or was directed to his attention.

Furthermore, Plaintiff's Ex. D, a "Health Care Services Request Form" dated October 31, 2007,

shows that Plaintiff was housed in "B-2-121," consistent with Dr. Akanno's assertion that Miller was

transferred to the B yard.  In Ex. D, Plaintiff asked for treatment for his thumb.  Thus, at the time of the

suggested follow-up in 5 days noted above, Miller was in the B facility and not subject to Dr. Akanno's

care.  Miller made another request on a "Health Care Services Request Form" (Plaintiff's Ex. E) on

November 7, 2007.  It appears that he was seen by RN Triesch on November 8, 2007, who noted that

a splint was applied to his thumb per Dr. Patel's orders.  (Exs. D and E.)  Thus, consistent with Dr.

Akanno's asertions, Miller's care was passed to facility B.

Viewing the evidence in the light most favorable to Miller as the non-moving party, the Court

finds as a matter of law Miller's scant allegations against Dr. Akanno fail to posit so much as a

negligence claim.  "[A] prisoner must allege acts or omissions sufficiently harmful to evidence

1   *deliberate* indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106; <u>Jett</u>, 439 F.3d at 1096;

2   <u>McGuckin</u>, 974 F.2d at 1060.  "It is *obduracy and wantonness, not inadvertence or error in good faith*,

3   that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." <u>Wilson</u>,

4   501 U.S. at 298-99.  Even evidence of gross negligence or medical malpractice cannot sustain an Eighth

5   Amendment cruel and unusual punishment cause of action. <u>Estelle</u>, 429 U.S. at 106; <u>Wood</u>, 900 F.2d

6   at 1334; *see also* <u>Sanchez v. Vild</u>, 891 F.2d 240, 242  (9th Cir. 1989) (an actual difference of competent

7   medical opinion regarding diagnosis or treatment "does not amount to deliberate indifference to a serious

8   medical need" as required for liability under Section 1983); <u>Toguchi</u>, 391 F.3d at 1058 ("[A] mere

9   'difference of medical opinion  . . . [is] insufficient, as a matter of law, to establish deliberate

10  indifference' "), *quoting* <u>Jackson</u>, 90 F.3d at 332..  To defeat summary judgment, Miller had to do more

11  than assert his own belief regarding what Dr. Akanno should have done.

12          In summary, Dr. Akanno's immediate ordering of medication for Miller's pain inescapably

13  absolves Dr. Akanno of liability as a matter of law on an Eighth Amendment  theory of "unnecessary

14  and wanton infliction of pain." *See* <u>Hallett</u>, 296 F.3d at 744; <u>Estelle</u>, 429 U.S. at 104.  Similarly, his

15  immediate ordering of an x-ray for the purpose of diagnosing the nature of Miller's thumb injury

16  inescapably absolves Dr. Akanno of liability as a matter of law on an Eighth Amendment theory of

17  "deliberate indifference" to a serious medical need, for failure of proof the official "knows of and

18  disregards an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837.  The x-ray results were

19  not obtained from the outside medical facility until October 26, 2007, three days after Dr. Akanno's only

20  involvement with Miller's case, substantiating for the first time the thumb was actually broken.  Miller

21  was released from Ad Seg to B yard rather than returned to A yard where Dr. Akanno worked.  He has

22  not produced any evidence adequate to create a genuine issue of material fact on his Eighth Amendment

23  claim that Dr. Akanno personally "denied, delayed or intentionally interfered with" Miller's medical

24  treatment. <u>Jett</u>, 439 F.3d at 1096.

25  ///

26  ///

27  ///

28  ///

1

**III.     CONCLUSION AND ORDER**

2

　　　　For all the foregoing reasons, **IT IS HEREBY ORDERED** defendant Dr. Akanno's Motion For

3

Summary Judgment in his favor is **<u>GRANTED</u>**, and he is dismissed from this action.

4

　　　　**IT IS SO ORDERED.**

5

6

DATED:  March 16, 2011

7

8

Honorable Barry Ted Moskowitz
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28